IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____
                               )
ALLSTATE INSURANCE COMPANY,    )
                               )
                  Plaintiff,   )
                               )
        vs.                    )
                               )    Civ. No. 11-00529 ACK-BMK
JULIA K.S. RIIHIMAKI,          )
                               )
                  Defendant.   )
                               )
_____)
```

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

For the following reasons, the Court GRANTS Allstate's Motion for Summary Judgment, and DENIES Defendant's alternative Motion for a Continuance Pursuant to Fed. R. Civ. P. 56(d).

**I.   PROCEDURAL BACKGROUND**

Plaintiff (hereinafter "Plaintiff" or "Allstate") filed the Complaint against the defendant (hereinafter "Defendant" or "Riihimaki") on August 30, 2011, seeking a declaration that Plaintiff has no duty to defend or indemnify Defendant, or to provide any other insurance coverage to Defendant under the

relevant homeowners policy in Defendant's underlying lawsuit (the "Underlying Lawsuit").  Compl. at 7.  On September 22, 2011, Defendant filed an Answer to the Complaint.  (Doc. No. 6.)

Plaintiff filed a Motion for Summary Judgment on March 12, 2012 (Doc. No. 13, the "MSJ"), as well as a memorandum in support of the motion (Doc No. 13-1, the "Mem. in Supp. of MSJ"). On the same day, Plaintiff filed a Statement of Undisputed Facts in support of its motion. (Doc. No. 14, the "CSF").  On April 20, 2012, Defendant filed a memorandum in opposition to the Motion for Summary Judgment  (Doc. No. 16, "D's Opp. Mem."), as well as a response to the Concise Statement of Facts (Doc. No. 17, "D's Response to CSF").  Plaintiff filed a reply to Defendant's response on April 30, 2012.  (Doc. No. 19, "P's Reply.)

This Court held a hearing on Plaintiff's Motion for Summary Judgment on Monday, May 14, 2012.  The Court directed the parties to submit supplemental briefs regarding whether there is a duty to defend because of references to "embarrassment" in the underlying suit's complaint and/or because of the possibility of an amended complaint being filed in the underlying action.  On May 17, 2012, Plaintiff and Defendant filed supplemental briefs addressing this issue.  (See Doc. Nos. 21, 22, hereinafter respectively "D's Supp. Mem." and "P's Supp. Mem.")

## II.  FACTUAL BACKGROUND[1/]

### A.  The Underlying Action

On June 6, 2011 Young Hui Kim ("Kim," not a party to this action) filed a complaint against Defendant in the First Circuit Court, State of Hawaii, encaptioned <u>Young Hui Kim v. Julia Kyung Soon Riihimaki, et al.</u>, Civ. No. 11-1-1139-06, in the Underlying Lawsuit.  CSF ¶ 1.  The complaint alleges that Kim owned a residential property located in Kaneohe, Hawaii (the "Property").  <u>Id.</u> ¶ 2.  In or about April 2008, Defendant allegedly entered into an Agreement of Sale to purchase the Property from Kim for $1,150,000, to be paid with a down payment of $300,000 and a balance of $850,000.  <u>Id.</u> ¶ 3.  Defendant allegedly was unable to secure financing and forced Kim to sign a promissory note and execute a mortgage on the Property in Defendant's favor.  <u>Id.</u> ¶ 4.  The complaint alleges that Defendant forced Kim to convey the Property to her by way of a warranty deed, although the Agreement of Sale was never consummated and Defendant never paid the remaining $850,000 to Kim or accounted for rental payments paid to Defendant by tenants residing on the Property.  <u>Id.</u> ¶ 5.

The complaint alleges the following causes of action:

---

[1/] The facts as recited in this order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Quiet Title, Unfair and Deceptive Trade Practice, Breach of Contract, Unjust Enrichment, Conversion, Accounting, Injunctive Relief, Constructive Trust, and Punitive Damages.  Id. ¶ 5. Additionally, the complaint prays for the following relief: return of possession and marketable title, damages for breach of contract, an order allowing a notice of pendency of the action, disgorgement of funds wrongfully collected, a temporary restraining order, and special, general, treble and/or punitive damages, as well as attorney's fees and costs.  Id. ¶ 7. Although the complaint does not present a claim for defamation, it does allege that Riihimaki "compelled" Kim to sign a promissory note under "threats of coercion, lawsuits and embarrassment."  (CSF, Ex. A at 3.)

Defendant tendered defense of the Underlying Lawsuit to Plaintiff, and Plaintiff is defending the action under a reservation of rights.  Id. ¶ 8.  At all relevant times, Defendant was the named insured under an Allstate Deluxe Plus Homeowners Policy, No. 920801493 (the "Homeowners Policy").  Id. ¶ 9.

## B.  The Insurance Policy

At the time of the underlying claims, Defendant was insured under the Homeowners Policy, which provided the following coverage:

> Section II Family Liability and Guest Medical Protection

-4-

> Coverage X Family Medical Protection
>
> Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies and covered by this part of the policy.

MSJ Ex. B, Form AP337, at 19.   "Occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." Id. at 3.

"Bodily injury" is defined as "physical harm to the body, including sickness or diseases, and resulting death . . . ." Id. at 2.  "Property damage" is defined as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction."  Id. at 3.

The liability coverage provided in Coverage X is subject to the following relevant exclusions:

> Losses We Do Not Cover Under Coverage X
>
> 1.  We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. . . .[2]

Id. at 19.

_____

[2] The Policy further provides: "This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime." Id. at 19.

15.  We do not cover any liability an insured
person assumes arising out of any contract or
agreement.

Id. at 21.

Allstate seeks a declaration that it has no duty to

defend or indemnify Riihimaki in the Underlying Lawsuit pursuant

to the Homeowners Policy.

### III.  STANDARD OF REVIEW

**A.  Summary Judgment Standard**

The purpose of summary judgment is to identify and

dispose of factually unsupported claims and defenses.  See

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Summary

judgment is therefore appropriate if "the movant shows that there

is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"A party asserting that a fact cannot be or is genuinely disputed

must support the assertion," and can do so in either of two ways:

by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions,

interrogatory answers, or other materials"; or by "showing that

the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce

-6-

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[3] Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Miller v. Glenn Miller Prods., 454 F.3d 975, 987 (9th Cir. 2006). The moving party may do so with affirmative evidence or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the

---

[3] Disputes as to immaterial facts do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

nonmoving party's case." Celotex, 477 U.S. at 325.[4/]  Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See Celotex, 477 U.S. at 324; Matsushita Elec., 475 U.S. at 586; Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[5/] The nonmoving party must instead set forth "significant probative evidence" in support of its position. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

---

[4/] When the moving party would bear the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. See Miller, 454 F.3d at 987 (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. See id. (citing Celotex, 477 U.S. at 325).

[5/] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Johnson v. Wash. Metro. Area Transit Auth., 883 F.2d 125, 128 (D.C. Cir. 1989) ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury."), cited in Villiarimo, 281 F.3d at 1061.

(quoting First Nat'l, 391 U.S. at 290).  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Elec. Serv., 809 F.2d at 630–31.[6/]  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  Anderson, 477 U.S. at 250–51.

**B.  An Insured's Duty to Defend or Indemnify Under Hawaii Law**

Hawaii law provides for a broad duty to defend whenever the pleadings raise a potential for indemnification liability of the insurer to the insured.  Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004); First Ins. Co. of Hawaii, Inc. v. Hawaii, 665 P.2d 648, 653 (Haw. 1983).  "The duty to defend exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined

---

[6/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.  See Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

at the time suit is filed." Burlington Ins. Co., 383 F.3d at

944; see also First Ins. Co., 665 P.2d at 653.  "'Furthermore,

where a suit raises a potential for indemnification liability of

the insurer to the insured, the insurer has a duty to accept the

defense of the entire suit even though other claims of the

complaint fall outside the policy's coverage.'" Burlington Ins.

Co., 383 F.3d at 944 (quoting Hawaiian Holiday Macadamia Nut Co.

v. Indus. Indem. Co., 872 P.2d 230, 233 (Haw. 1994)).

          Hawaii adheres to the "complaint allegation rule."

Burlington Ins. Co., 383 F.3d at 944.  Therefore, the duty to

defend is limited to situations where the underlying pleadings

have alleged a claim for relief which falls within the terms for

coverage of the insurance contract.  See id.  In determining

whether coverage exists, "Hawaii courts do not look merely at the

label that a litigant places on his claim, but at the underlying

facts alleged in the pleadings." State Farm Fir and Cas. Co. v.

Metropolitan Mgmt., Civ. No. 07-00176 HG-KSC, 2007 WL 4157148, at

*8 (D. Haw. Nov. 23, 2007) (citing Bayudan v. Tradewind Ins. Co.,

87 Haw. 379, 387, 957 P.2d 1061, 1069 (Haw. App. 1998)).  "'Where

pleadings fail to allege any basis for recovery within the

coverage clause, the insurer has no obligation to defend.'"  Id.

(quoting Hawaiian Holiday, 872 P.2d at 233) (emphasis added).

Yet "where the complaint in the underlying lawsuit alleges facts

within coverage," an insurer that wishes to avoid providing a

-10-

defense has a high burden.  <u>Dairy Rd. Partners v. Island Ins.</u>
<u>Co.</u>, 992 P.2d 93, 117 (Haw. 2000).

The insurer may rely on extrinsic facts to deny a
defense, but only "by showing that <u>none</u> of the facts upon which
it relies might be resolved differently in the underlying
lawsuit."  <u>Id.</u>; <u>see also</u> Allan D. Windt, 1 <u>Insurance Claims &</u>
<u>Disputes: Representation of Insurance Companies & Insureds</u> § 4:4
(5th ed. 2011) (stating that "[i]nsurers, as a general rule, are
not allowed to refuse to defend on the grounds that they are in
possession of information establishing that the allegations in
the complaint giving rise to coverage are untrue" and noting four
common exceptions to that rule).

Furthermore, the Hawaii Supreme Court has cautioned
that "courts should carefully examine the allegations of a
complaint to ensure that the plaintiffs are not, through artful
pleading, bootstrapping themselves to obtain insurance coverage
by purporting to assert claims of negligence based on facts that
reflect intentional, rather than negligent conduct."  <u>Estate of</u>
<u>Rogers v. Amer. Reliable Ins. Co.</u>, Civ. No. 10-00482 SOM-RLP,
2011 WL 2693355, at *5 (D. Haw. July 8, 2011) (citing <u>Dairy Road</u>
<u>Partners</u>, 92 Haw. at 417, 992 P.2d at 112; <u>Group Builders, Inc.</u>
<u>v. Admiral Ins. Co.</u>, 123 Haw. 142, 147, 231 P.3d 67, 72 (Haw.
App. 2010)).

To obtain summary judgment that it has no duty to defend, an insurer has the burden of proving that there is "no genuine issue of material fact with respect to whether a possibility exist[s]" that the insured will incur liability for a claim covered by the policy. Dairy Rd. Partners, 992 P.2d at 107. In other words, Allstate must prove that it would be impossible for Kim in the underlying suit to prevail against Riihimaki on a claim covered by the policy. See id. at 107-08.

An insurer's duty to defend is contractual in nature and a court must examine the terms of the policy to determine the scope of the duty. Commerce & Indus. Ins. Co. v. Bank of Hawaii, 832 P.2d 733, 735 (Haw. 1992). Insurance policies are "subject to the general rules of contract construction." Dairy Rd. Partners, 992 P.2d at 106. Yet insurance contracts are contracts of adhesion, so they "must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." Id. at 106-07. "Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson." Id. at 107.

However, "absent ambiguity, the terms of the policy are interpreted according to their plain, ordinary, and accepted sense in common speech." State Farm Fire & Cas. Co. v. Willison, __ F. Supp. 2d __, 2011 WL 2580776, at *4 (citing Oahu Transit

-12-

Serv., Inc. v. Northfield Ins. Co., 107 Hawaii 231, 112 P.3d 717, 722 n.7 (Haw. 2005)) (internal citations omitted).

The duty to defend is broader than the duty to indemnify.  See Sentinel Ins. Co., Ltd., 76 Haw. 277, 287, 875 P.2d 894, 904 (Haw. 1994).  The insurer owes a duty to the insured to indemnify "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion."  State Farm Fire and Casualty Co v. Vogelgesang, Civ. No. 10-00172 SOM-BMK, 2011 WL 2670078 (D. Haw. July 6, 2011) (quoting Dairy Road Partners, 92 Haw. at 413, 992 P.2d at 108)).

## IV.   DISCUSSION

Allstate requests that this Court determine as a matter of law that it has no duty to defend or indemnify Defendant. Defendant opposes the motion, asserting that the Underlying Lawsuit may result in defamation and/or negligent infliction of emotional distress claims that would allegedly trigger Allstate's duty to defend.  (Pl's Opp. Mem. at 8-13.)  Alternatively, Defendant requests that the Court continue the hearing on Plaintiff's Motion for Summary Judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure so that Defendant may complete basic discovery in the Underlying Lawsuit.  Id. at 13.

This is a diversity action.  Federal courts sitting in diversity apply state substantive law and federal procedural law.

State Farm Fire & Cas. Co. v. Nuuanu Baptist Church, Civ. No. 11-00480 BMK, 2012 WL 1571415, at *2 (D. Haw. Apr. 30, 2012) (citations omitted).  A federal court interpreting state law is bound by the decisions of a state's highest court.  Id. (citations omitted).  To the extent this case raises issues of first impression under Hawaii law, the Court, "sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide [the] issue."  Burlington, 383 F.3d at 944 (alterations in original) (internal quotations omitted).

For the reasons described below, the Court concludes that, as a matter of law, Allstate is not required to defend or indemnify Plaintiff in the Underlying Lawsuit.

**A.  Allstate Does Not Have a Duty to Defend**

Allstate asserts that the Underlying Lawsuit does not seek damages for "bodily injury" or "property damage" as defined in the Homeowners Policy, which limits its coverage to those two categories of damages.  (Mem. in Supp. of MSJ, at 1.)  Moreover, Allstate argues that the breach of an Agreement of Sale, as alleged in the Underlying Lawsuit, "certainly does not qualify as an 'occurrence.'"  Id.  Finally, even if the Underlying Lawsuit asserted claims that would be covered under the Homeowners Policy, Allstate contends that such claims would be barred by policy exclusions.  Id. at 18-19.  In its supplemental

-14-

memorandum, Allstate argues that the allegation that Riihimaki compelled Kim to sign a promissory note "under threats of coercion, lawsuits and _embarrassment_" does not implicate any covered claims, and asserts that the notion that the underlying complaint ("Underlying Complaint") could be amended to allege defamation is mere speculation that cannot trigger the insurer's duty to defend.  (P's Supp. Mem. at 5, 10.)   The thrust of Defendant's response is that although the claims in the complaint may not be covered under the policy, Allstate has been placed on "notice" that there is a potential that Kim might add claims that would trigger Allstate's duty to defend, thereby obligating Allstate to defend the entire lawsuit.  (Opp. Mem. at 8-13).   In its supplemental memorandum, Riihimaki asserts that the allegations in the Underlying Complaint regarding "embarrassment," coupled with Kim's interrogatory responses that reference Riihimaki's alleged defamatory statements about Kim, apprised Allstate of the possibility of coverage and triggered the duty to defend.  (D's Supp. Mem. at 5.)   These arguments are considered in turn.

### 1. *No Occurrence*

The Hawaii Supreme Court jurisprudence in the area of disputes over whether an insured's conduct as pled in underlying complaints is accidental and thus an "occurrence," "establish[es] that, under Hawaii law, 'in order for the insurer to owe a duty

-15-

to defend or indemnify, the injury cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.'" <u>State Farm Fire & Cas. v. Elsenbach</u>, Civ. No. 09-00541 DAE-BMK, 2011 WL 2606005, at *11 (D. Haw. June 30, 2011) (quoting <u>Hawaiian Holiday</u>, 872 P.2d at 234). The Hawaii Supreme Court cases further establish that "'[t]he question of what is an "accident" must be determined by addressing the question from the view point of the insured.'" <u>Id.</u> (quoting <u>Hawaiian Holiday</u>, 872 P.2d at 234).

Allstate asserts that coverage for contract-based claims such as those in the Underlying Lawsuit is barred by decisions by the Ninth Circuit Court of Appeals, as well as the Hawaii Intermediate Court of Appeals, both of which "ruled that claims arising out of a contractual relationship, even those purportedly sounding in tort, do not allege an 'occurrence' or 'accident.'" <u>Id.</u>[7] Furthermore, Allstate contends that the Hawaii Supreme Court and federal courts construing Hawaii law consistently support a view that even claims that allegedly involve negligent conduct, if they arise out of a breach of contract, do not fall within the scope of coverage under an "occurrence" policy. <u>Id.</u> at 13.

---

[7] Plaintiff cites <u>Burlington Ins. Co.</u>, 383 F.3d 940; and <u>Group Builders, Inc. v. Admiral Ins. Co.</u>, 123 Haw. 142, 231 P.3d 67 (Haw. App. Ct. 2010).

-16-

Allstate argues that all claims in the Underlying Complaint are based upon the existence of the Agreement of Sale between Kim and Riihimaki, creating a "quintessential contract-based claim," with no cause of action for negligence.  Id. at 15.  As such, Allstate submits that the Underlying Complaint fails to allege an "occurrence" as it is contemplated under the Homeowners Policy and pursuant to Hawaii law.  Id. at 16.

In her opposition memorandum, Defendant does not contend that the allegations in the Underlying Complaint arise out of an "occurrence," as it is contemplated in the Homeowners Policy.  (See D's Opp. Mem.)  Rather, Defendant appears to base her argument for insurance coverage on the possibility that Kim "could request damages for bodily injury arising out of an occurrence separate from the Contract, namely, alleged defamatory actions by Riihimaki."  Id. at 9.  Accordingly, Riihimaki submits that a question of fact remains as to whether these alleged defamatory statements constituted an "occurrence" under the Homeowners Policy.  This possibility of future claims is based largely on Kim's interrogatory responses, as well as Kim's allegation in the Underlying Complaint that Riihimaki compelled Kim to sign a promissory note under threats of coercion, lawsuits and embarrassment.  (See D's Supp. Mem. at 5.)

The Court concludes that the complaint in the Underlying Lawsuit fails to allege an "occurrence," as it is

-17-

defined under the Homeowners Policy.  As Plaintiff correctly asserts, it is well-settled that under Hawaii law claims arising out of a contractual relationship, even those purportedly sounding in tort, do not allege an "occurrence" or "accident" for purposes of insurance liability coverage.  See Burlington, 383 F.3d at 948; Group Builders, 123 Haw. at 148, 231 P.3d at 73. All of the claims in the Underlying Complaint directly arise out a contractual relationship with respect to the Agreement of Sale.[8]  Moreover, "[i]n Hawaii, an occurrence 'cannot be the expected or reasonably foreseeable result of the insured own intentional acts or omissions.'"  Burlington, 940 F.3d at 948 (quoting Hawaiian Holiday, 872 P.2d at 329)).[9]

---

[8] See, e.g., Hawaiian Holidays, 76 Haw. 166, 171 ("The [] plaintiffs confined their claims for relief to claims for causes of action for breach of contract and fraud. These claims are not negligence claims resulting from accidental conduct.  Because the CGL policy provides coverage for accidental conduct only, the underlying complaint did not allege any basis for recovery that was covered by the policy."); see also Burlington, 383 F.3d at 944 (granting summary judgment in favor of insurer, finding that no damages in underlying complaint for breach of contract, breach of express and implied warranty, deceptive trade practices, intentional and negligent infliction of emotional distress, and punitive damages, arose from an occurrence/accident within the meaning of the insurance policy).

[9] Defendant's reliance on Tri-S Corp. v. Western World Ins. Co., 110 Haw. 473, 135 P.3d 82 (2006) is misplaced.  In Tri-S, the court concluded that an insured carried its burden of establishing the possibility that the underlying claim involved an "occurrence" and was thus covered under the insurance policy. Id. at 493.  However, this conclusion was based upon a finding that an "occurrence" as defined in the relevant policy did not exclude wilful and wanton misconduct.  Id.  The court reasoned
(continued...)

Additionally, regardless of the existence of an actual contract, allegations that stem directly from contract-based or intentional acts are still not covered as "occurrences" under insurance policies.  See State Farm Fire and Cas. Co. v. Lau, Civ. No. 06-00524 DAE-BMK, 2007 WL 1288153, at *5 (D. Haw. Apr. 30, 2007).[10/]  All of the claims in the Underlying Complaint arise out of the unrecorded Agreement of Sale.  (See CSF, Exhibit A ¶ 4.)  Specifically, Kim alleges that Riihimaki failed to make required payments under the Agreement of Sale, and notwithstanding, "took control" of the Property and collected rentals; compelled Kim through threats of coercion to sign a promissory note and execute a mortgage in favor of Riihimaki; and compelled Kim to convey the Property to Riihimaki by way of a warranty deed.  Id. ¶¶ 8-11.

These alleged actions all arise out of the contractual relationship between Kim and Riihimaki.  Moreover, the alleged actions that form the basis for the lawsuit are intentional in nature.  Accordingly, even liberally construing the allegations

_____

[9/] (...continued)
that the insured could be held liable for recklessness, which "does not involve intent or expectation of injury and is thus a covered occurrence under the policy."  Id. at 494.

[10/] See also State Farm Fire and Cas. Co. v. Lau, Civ. No. 06-00524 DAE-BMK, 2007 WL 1288153 at *5 (D. Haw. Apr. 30, 2007)(finding that regardless of the existence of a contract in the underlying suit, the allegations still were contract-based and accordingly did not trigger the insurer's duty to defend under the policy).

in favor of the insured, and from insured's perspective, the Court concludes that none of the allegations in the Complaint constitute an "occurrence" under the Homeowners Policy.[11]

### 2.  No Property Damage or Bodily Injury

Allstate further asserts that Defendant's claim fails to fall within the scope of coverage because there is no claim in the Underlying Lawsuit for "property damage" or "bodily injury." (Mem. in Supp. of MSJ, at 9.)  The Underlying Lawsuit "alleges only intangible economic losses, and does not allege that Riihimaki caused any damage to tangible property," thereby failing to allege property damages as defined under the Homeowners Policy.  Id. at 9-10.  Allstate relies upon the Hawaii Supreme Court's holding that purely economic losses are not "property damages" under liability insurance law.  Id. at 16 (citing Hawaiian Holiday, 76 Haw. at 171, 872 P.2d at 235.

Additionally, Allstate argues, there is no claim for "bodily injury" within the Homeowners Policy's definition because the Underlying Lawsuit contains no allegations that Kim sustained any bodily injury or physical harm to her body.  Id. at 10, 17.

Once again, in her opposition memorandum, Defendant does not dispute that the allegations in the Underlying Complaint fail to allege "bodily injury" or "property damage."  Instead,

---

[11] The Court addresses Defendant's arguments with respect to whether potential future claims constitute an "occurrence" below in subsection 5.

Plaintiff focuses on a potential future claim for defamation and/or negligent infliction of emotional distress ("NIED"). (See D's Opp. Mem. at 8-13.)  Defendant argues that her alleged statements "could also be considered to result in 'bodily injury', if Kim alleges damages due to resulting physical manifestations of stress, or mental or emotional distress." Id. at 11 (emphasis added).[12/]  These arguments are considered infra in Section V.A.4.

The Court concludes that based upon the pleadings, the Underlying Lawsuit does not allege "property damage" or "bodily injury."  The complaint alleges only intangible economic losses, and fails to allege that Riihimaki caused damage to any tangible property.  (See P's Opp. Mem., Ex. A.)  Furthermore, the Complaint contains no allegations of bodily injury.  Although Kim alleges that Riihimaki "forced and coerced" her to convey the property by way of a warranty deed "[u]pon threats of physical bodily harm . . ." she does not allege that she sustained any "physical harm to the body, including sickness or diseases, and resulting death . . . ."  (MSJ Ex. B, Form AP337, at 2.)

_____

[12/] Defendant also emphasizes that in determining whether there is a possibility of coverages, Allstate "must look beyond the effect of the pleadings and must consider any facts brought to its attention or any acts which it could reasonably discover in determining whether it has a duty to defend . . . ."  Id. at 13 (citing Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co. Ltd., 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982).  This argument is addressed infra in Section V.A.4.

Accordingly, the Court concludes that the lack of any allegations of "property damage" or "bodily injury" provides a separate basis to conclude that Allstate has no duty to defend Riihimaki in the Underlying Lawsuit.

### 3.   Policy Exclusions: Intentional Acts and Contract Claims

Allstate further contends that even if the Underlying Complaint contained allegations of "property damage" or "bodily injury," Allstate nevertheless would be under no duty to defend or indemnify because all such claims fall within the policy exclusions for both intentional acts and for liability arising out of a contract or agreement.  (Mem. in Supp. of MSJ, at 1-2.)

The first applicable exclusion under the Homeowners Policy "excludes coverage for bodily injury or property damage which is either intended by or which reasonably may be expected to result from the intentional acts of any insured."   (MSJ Ex. B, Form AP337, at 18.)  Significantly, as noted above, the complaint in the Underlying Lawsuit alleges that Riihimaki "took control" of Kim's property, "forced" Kim out of the house; compelled Kim to sign a Promissory Note and to execute a mortgage in favor of Riihimaki "under threats of coercion, lawsuits and embarrassment"; and "forced and coerced" Kim to convey the property by way of a Warranty Deed "[u]pon threats of physical bodily harm and lawsuits." (D's Opp. Mem., Ex. A ¶¶ 8-11.)  The

Court concludes that damages sought based upon these facts were the result of actions by Defendant that were either intended or such that one would reasonably expect them to follow from the alleged conduct, even when viewed from the perspective of the insured.  Accordingly, the Court concludes that the allegations in the Underlying Complaint fall within the unambiguous intentional acts exclusion under the Homeowners Policy.

The second applicable exclusion relieves Allstate from covering liability that an insured assumes arising out of any contract or agreement.  Id. at 19.  Allstate contends that this exclusion bars Riihimaki from coverage under the Homeowners Policy because the complaint in the Underlying Lawsuit is "entirely premised" on the Agreement of Sale.  Id. at 20. Indeed, the policy is unambiguous in stating that "[w]e do not cover any liability an insured person assumes arising out of any contract or agreement." MSJ Ex. B, Form AP337, at 21.  This unambiguous exclusion is another basis for determining that Allstate does not have a duty to defend.

### 4.   *Potential Future Claims for Defamation and/or Negligent Infliction of Emotional Distress Do Not Trigger a Duty to Defend or Indemnify*

The crux of Riihimaki's opposition is that Allstate has a duty to defend and indemnify her in the Underlying Lawsuit because Kim may, at some time in the future, allege claims for defamation and/or emotional distress that allegedly would be

-23-

covered under the Homeowners Policy, and may seek damages based upon these allegedly covered claims as well.  (<u>See</u> D's Opp. Mem. at 8-13; D's Supp. Mem. at 3-7.)  Riihimaki asserts that Allstate's broad duty to defend arises because Allstate has been placed "on notice" that there is a <u>potential</u> for coverage based upon Kim's allegation that Riihimaki coerced Kim to sign a promissory note under threats of coercion, lawsuits and <u>embarrassment</u>, as well as Kim's interrogatory responses in connection with the Underlying Complaint which referenced Riihimaki's alleged defamatory statements.  (D's Opp. Mem.  at 7; D's Supp. Mem. at 5.)  In response, Plaintiff argues that this argument fails for three central reasons:  (1) there are no claims for defamation or emotional distress plead in the complaint, and Hawaii follows the "complaint allegation rule"; (2) even if a claim for defamation had been alleged, it would not be covered under the Homeowners Policy; and (3) coverage is precluded in any event by the intentional acts and contract exclusions.  (<u>See</u> P's Reply.)

> *a.* *Insurer's Duty to Look Beyond the Pleadings*

The Hawaii Supreme Court has repeatedly affirmed that "[w]here pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." <u>Hawaiian Holiday</u>, 76 Haw. at 169, 872 P.2d at 233 (internal citations omitted).  However, the same court has also held that

insureds "ha[ve] a right to expect that their insurance company [will] make a determined effort to ascertain not only from the pleadings but also from the insurer's own independent investigation whether the insured[s] were entitled to defense representation under [a] policy." Bayudan, 957 P.2d at 1066 (quoting Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co. Ltd., 65 Haw. 521, 521, 654 P.2d 1345, 1345 (1982)).  Riihimaki relies heavily upon the holding in Standard Oil for her assertion that Allstate's duty to defend is triggered in spite of the fact that no specific allegations in the Complaint are covered under the Homeowners Policy.  (See D's Opp. Mem. at 13; D's Supp. Mem. at 3-7.)

In Standard Oil, the Hawaii Supreme Court held that the allegations in a complaint should have alerted the insurer to the possibility that a refueler truck that was covered by the insurance policy might have been involved in the accident at issue, thereby triggering the duty to defend.  65 Haw. 521 at 526-27, 654 P.2d at 1349.  The court determined that the pleadings did not have to specifically reference the refueler truck to establish that the truck was the cause of the accident. Id.  The court stated:

> [A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend.... [T]he duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists the company owes the insured a

-25-

defense. The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation.

65 Haw. at 525, 654 P.2d at 1349 (citing Spruill Motors, Inc. v. Universal Under. Ins. Co., 212 Kan. 681, 686, 512 P.2d 403, 407 (1973)).[13/] The holding in Standard Oil must be analyzed in context. In that case, the court rejected an insurer's argument that it had no duty to defend based upon the insureds' failure to provide timely notice. The court found that the pleadings forwarded to HIG by its insured indicated a potential for liability for a covered risk related to a refueler truck (although the pleadings did not specifically mention the refueler truck).[14/] Standard Oil, 65 Haw. at 526, 654 P.2d at 1349.

---

[13/] Specifically, the court relied upon the Kansas Supreme Court's statement that: "[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend . . . ." Standard Oil, 65 Haw. at 526, 654 P.2d at 1349 (quoting Spruill Motors, 212 Kan. at 686, 512 P.2d at 407).

[14/] Specifically, the court in Standard Oil concluded that the insurer received the required notice when it received complaints including allegations "[That] [D]efendants . . . in inspecting, servicing, maintaining and repairing the subject aircraft, and in failing to detect and remove blockages and obstruction to the flow of fuel into the engines, and said defendants . . . were otherwise negligent and careless [.] [Emphasis added]." Id. at 1348-49. The court explained that "[t]he foregoing should have alerted [the insurer] to the possibility that the refueler truck which was covered by its policy might have been involved," stating that "the pleadings did not have to specifically mention the refueler truck or establish

(continued...)

-26-

Accordingly, the court found that the allegations in the
pleadings should have alerted HIG to the possibility of coverage
under its policy, thereby notifying HIG and triggering the duty
to defend.[15/]  Id.  The court in Standard Oil did not consider any
facts advanced during later discovery, such as interrogatory
responses, as Defendant asks the Court to consider in the instant
action.

Subsequent cases that have relied upon Standard Oil
generally have limited the insurer's duty to look beyond the
allegations in the underlying complaint.  For example, in Bayudan
v. Tradewind, the Intermediate Court of Appeals recognized that

---

[14/] (...continued)
that the refueler truck was the cause of the accident."  Id.

[15/] Significantly, the Supreme Court of Hawaii has since
cautioned that Standard Oil did not carry this concept "one step
farther," as the Kansas Supreme Court had done in Spruill Motors:
"We note that, in Spruill Motors, Inc. . . . the Kansas Supreme
Court carried the above-described concept one step farther . . .
. [holding] that although intentional acts were excluded from
coverage by the insurance policy at issue, and the underlying
complaint expressly alleged that the plaintiff had been injured
because of the intentional acts of the insured's agent, the
insurer nevertheless was subject to a duty to defend because the
information independently available to the insurer demonstrated
that the insured's agents' acts had, in fact, been negligent
rather than intentional . . . . Thus, even where the language of
the complaint affirmatively and unambiguously excluded the
possibility of coverage, Spruill Motors, Inc. required the
insurer to investigate further to determine whether there was a
possibility of coverage in any event.  We do not believe that the
Standard Oil court intended to endorse so expansive a view, and
we do not do so now." Dairy Road Partners, 92 Haw. at 415, 992
P.2d at 110 n. 9.

numerous jurisdictions now hold that an insurer must look beyond the allegations of the complaint in determining the duty to defend.  87 Haw. at 384, 957 P.2d at 1066.  The court turned to the Supreme Court of Washington's directive regarding the circumstances under which an insurer must investigate and look beyond the allegations in the pleadings to determine its duty to defend:  "(a) the allegations are in conflict with the facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate."  Id. (citing E-Z Loader Boat Trailers v. Travelers Indem. Co., 106 Wash.2d 901, 726 P.2d 439, 443-44 (1986)).  The court noted that the second scenario appeared to be the basis for the court's ruling in Standard Oil.

    With this in mind, the court rejected the insured's argument that certain counts in the complaint alleging negligence raised a potential for coverage and/or indemnification.  All of the claims alleged in the original complaint were "inherently related" to a kidnapping and assault claim, which the insured had admitted was not covered by the insurance policy.  Tradewind, 87 Haw. at 381, 957 P.2d at 1062.  Accordingly, in both Standard Oil and Tradewind, the court considered the scope of the insurer's duty to investigate based upon the pleadings.[16/]

────────────────────

    [16/] Generally, "[i]n order for extrinsic evidence to trigger a duty to defend, the extrinsic evidence must, of course, pertain
(continued...)

In <u>Dairy Road Partners</u>,[17/] a Hawaii Supreme Court case decided 18 years after <u>Standard Oil</u>, the court distinguished and clarified its earlier holding.  In that case, the court stated that "when the <u>facts</u> alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts (such as that the facts as alleged demonstrate 'negligent' rather than 'intentional' conduct) are in sufficient to trigger the insurer's duty to defend."  92 Haw. at 417, 992 P.2d at 112.

In her supplemental memorandum, Defendant also places a great deal of weight upon the California Supreme Court's holding in <u>Gray v. Zurich Ins. Co.</u>, 65 Cal.2d 263, 419 P.2d 168 (Cal. 1966), a case that the Supreme Court of Hawaii cited in <u>Standard Oil</u>.  In <u>Gray</u>, the court held that an insurer was obligated to defend the insured even though the underlying complaint did not allege bodily injury as contemplated under the policy because, among other things, the complaint could have been amended to reflect a coverable claim.  <u>Gray</u>, 419 P.2d at 170, 176-77.

---

[16/] (...continued)
to a claim that is being made against the insured.  That is . . . if a claimant has chosen not to pursue a covered claim, a duty to defend does not exist.  Extrinsic evidence, therefore, about such an unasserted covered claim cannot create a duty to defend.  It cannot pertain to a claim that the plaintiff is not making."  1 INSURANCE CLAIMS AND DISPUTES 5th § 4:3.

[17/] 92 Haw. 398, 922 P.2d 93.

-29-

The Court observes that Gray, a case referred to as a "half-century-old fountainhead case" and "insurance law's most cited opinion ever,"[18/] has 73 negative citing references on Westlaw since it issued more than 40 years ago.  The far more recent California opinion in Griffin Dewatering Corp. v. Northern Ins. Co. of New York expressed the limited reach of Gray in modern duty-to-defend actions, stating:

> However, the facts do not include speculative facts not in the complaint, or otherwise unknown by the insurance company. (See Friedman Prof. Management Co., Inc. v. Norcal Mut. Ins. Co., (2004) 120 Cal.App.4th 17, 34–35, 15 Cal.Rptr.3d 359 ["the universe of facts bearing on whether a claim is potentially covered includes extrinsic facts known to the insurer at the inception of the suit as well as the facts in the complaint, it does not include made up facts, just because those facts might naturally be supposed to exist along with the known facts"]; Westoil Terminals Co., Inc. v. Industrial Indemnity Co. (2003) 110 Cal.App.4th 139, 154, 1 Cal.Rptr.3d 516 [refusing to consider scenario not in facts of complaint]; Low v. Golden Eagle Ins. Co. (2002) 99 Cal.App.4th 109, 114, 120 Cal.Rptr.2d 827 [refusing to consider possibility of amendment of third party's complaint against policyholder because it would speculate "about unpled causes of action"]; Hurley Construction Co. v. State Farm Fire & Casualty Co. (1992) 10 Cal.App.4th 533, 538–539, 12 Cal.Rptr.2d 629 [refusal to consider hypothetical amendment to third-party's complaint against policyholder]; Gunderson v. Fire Ins. Exchange (1995) 37 Cal.App.4th 1106, 1114, 44 Cal.Rptr.2d 272 [quoting Hurley].)

176 Cal.App.4th at 198.

The Court concludes that Standard Oil and Gray, when viewed in light of later cases interpreting their limited reach,

---

[18/] See Griffin Dewatering Corp. v. Northern Ins. Co. of New York, 176 Cal.App.4th 172, 97 Cal.Rptr.3d 568 (Cal. App. 4th Dist. 2009).

do not extend the duty to investigate, and ultimately defend, based upon an allegation of "embarrassment" in the complaint and references to defamation in the interrogatory responses.  As an initial matter, Riihimaki has not advanced any case law support, and the Court is not aware of any, wherein statements in a set of interrogatories have been held to put an insurer "on notice" of a duty to defend.   Moreover, as discussed in greater detail below, "embarrassment" is not an element of defamation, and the allegation that Riihimaki coerced Kim with threats of embarrassment clearly alleges an intentional act, which would be excluded under the policy exceptions in the Homeowners Policy. Additionally, as Allstate correctly asserts, the factual allegation with respect to "embarrassment" is implicated in the uncovered claims in the complaint that arise out of a contractual relationship, thereby precluding coverage under <u>Bayudan,</u> 87 Haw. 380, 957 P.2d at 1062.[19/]   The evidence also does not suggest that the allegations in the complaint are in conflict with known or readily ascertainable facts, nor that the allegations are ambiguous or inadequate.  <u>See</u> <u>Tradewind</u>, 87 Haw. at 384, 957 P.2d at 1066.

_____

[19/] "[W]here a third party suing an insured alleges a claim that does not raise the potential for coverage under the insured's homeowner's insurance policy, and all of the factual allegations and injuries alleged in other counts of the complaint are "unquestionably implicate[d]" in the uncovered claim . . .the insurer does not have a duty to defend the insured."

The Court also observes that in the wake of Standard Oil, recent opinions involving determinations of Hawaii insurance coverage have continuously and consistently applied the "complaint allegation rule," limiting an insurer's duty to defend to situations where the pleadings have alleged claims for relief that fall within the terms of coverage. See, e.g., Nuuanu, 2012 WL 1571415, at *3 (applying the "complaint allegation rule); Vogelsgesang, 2011 WL 2670078, at *5; Willison, 2011 WL 2580776, at *4. Under the "complaint allegation rule," Kim's interrogatory responses clearly would not provide valid support for a conclusion that Allstate had a duty to defend Riihimaki in the Underlying Lawsuit. Moreover, Kim's allegation that Riihimaki coerced her with threats of "embarrassment" is too attenuated to suggest the possibility that Kim might amend the complaint to allege defamation at some time in the future. To hold that Allstate's duty to defend was triggered by a reference to "embarrassment," which was alleged in connection with uncovered claims, would encourage plaintiffs "through artful pleading, [to] bootstrap[] themselves to obtain insurance coverage by purporting to assert claims of negligence based on facts that reflect intentional, rather than negligent conduct." Estate of Rogers, 2011 WL 2693355, at *5 (citations omitted).

In any case, the Court rejects Defendant's assertion
that Allstate has a duty to defend based upon potential future
defamation and/or NIED claims on separate grounds.

### b. Defamation

In her opposition memorandum, Riihimaki concedes that
"Kim's Complaint does not allege a specific claim separate from
the Contract." (Opp. Mem. at 9.) Although, in her supplemental
memorandum, Riihimaki argues that Kim's allegation of Rihiimaki's
threats of "embarrassment," coupled with Kim's answer to the
interrogatories in the Underlying Lawsuit, suggest that Kim
"could allege additional damages" based upon Riihimaki's alleged
defamatory conduct.[20]  (See D's Supp. Mem. at 3-7.)  Defendant
contends that a question of fact remains as to whether the
alleged defamatory statements, which the Court reiterates are not
actually alleged in the complaint, constitute an "occurrence"
under the Homeowners Policy.  Id. at 11.

---

[20] Defendant cites interrogatory responses in the Underlying
Lawsuit such as "...she threatened me with physical harm and
tried to ruin my reputation in the community," and "...Julia
Riihimaki...constantly engaged in threats and defamatory
statements about [Kim]," as a basis for apparently predicting
that Kim may allege additional damages at some future point in
time. Id.  The Court observes that the complaint in the
Underlying Lawsuit contains no claims for defamation, nor any
facts to suggest the existence of such a claim.  See D's Opp.
Mem., Ex. A ¶¶ 12-41.

Under Hawaii law, a plaintiff must establish the following four elements to sustain a claim for defamation: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; [and] (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Wilson v. Freitas, 121 Haw. 120, 128, 214 P.3d 1110, 1118 (Haw. App. 2009) (quoting Gold v. Harrison, 88 Haw. 94, 100, 962 P.2d 353, 359 (1998)) (emphasis added).

Defendant relies upon a District of Hawaii case wherein the court held that there was a question of fact as to whether the insured's allegedly defamatory statements in the underlying complaint constituted an "occurrence" under the relevant insurance policy. Allstate Insurance Co. v. Gadiel, Civ. No. 07-00565 DAE-KSC, 2008 U.S. Dist. LEXIS 90923, at *13 (D. Haw. Nov. 7, 2008). Significantly, Gadiel is distinguishable from the instant action on two grounds. As an initial matter, the Court observes that the underlying complaint in Gadiel actually asserted a claim for defamation. The Underlying Complaint in this action contains no such allegation. This is a significant distinction, given Hawaii's general adherence to the "complaint

-34-

allegation rule."[21]   Second, Gadiel is a tort case, whereas the
Underlying Lawsuit arises out of a contractual relationship
between Kim and Riihimaki.  As discussed above in Section V.A.3,
the Homeowners Policy contains an exclusion for liability arising
out of any contract or agreement.  (MSJ Ex. B, Form AP337, at
21.)

        The Court agrees that a claim for defamation may be
based upon non-intentional conduct, as Judge Ezra ruled in
Gadiel.  However, the Court concludes that any potential future
claim for defamation, even if it is not based on intentional
acts, still would not be covered under the Homeowners Policy
because it necessarily flows from the contractual relationship
between Kim and Riihimaki.[22]   As described above, the genesis of
the complaint was the Agreement of Sale pursuant to which
Riihimaki allegedly agreed to purchase the Property from Kim.
The allegations and facts are inextricably tied to that
contractual relationship.  Kim's allegation that Riihimaki
coerced Kim to sign a promissory note under threats of coercion,

_____

        [21] The Court observes that the very case upon which
Defendant relies adheres to the "complaint allegation rule,"
noting that to determine whether the possibility of coverage
exists, "the court must review the allegations in the complaint
in the underlying action."  Gadiel, 2008 U.S. Dist. LEXIS 90923,
at *6.

        [22] See, e.g., CIM Ins. Corp., 74 F. Supp. 2d at 987
(negligence claims that "stemmed from intentional acts or
contract claims" did not trigger a duty to defend).

lawsuits and _embarrassment_ clearly arises out of the contractual relationship between Kim and Riihimaki and relates to the uncovered claims asserted based on that contractual relationship.

The Court agrees with Allstate that "it is difficult to see how the defamatory conduct which is referenced in Kim's answers to interrogatories about the basis for her claims could not have arisen out of the breach of the Agreement of Sale." (P's Reply, at 10.)   Accordingly, Allstate's duty to defend would not be triggered based upon a future claim for defamation because such a claim would not be covered based upon the policy exclusion for contract-based claims.

Even assuming that Kim might add a defamation claim that does not arise out of the Agreement of Sale, Riihimaki's reliance on _Gadiel_ for the assertion that the alleged defamatory statements could result in "bodily injury" is misplaced.   In that case, the insured had actually alleged that he sustained bodily injury and property damage as a result of various acts by the insureds.   2008 U.S. Dist. LEXIS 90923, at *10.   Moreover, although the _Gadiel_ court noted that "[f]or purposes of insurance coverage in Hawaii, bodily injuries include emotional distress," there is no allegation whatsoever in the complaint, nor in the interrogatories upon which Defendant relies, to suggest a possibility that damages for emotional distress are sought in the Underlying Lawsuit.   Concluding that Allstate must defend based

-36-

upon this more than remote possibility extends far beyond the holding in Standard Oil.  For these reasons, the Court concludes that Allstate does not have a duty to defend Riihimaki based upon a possible future claim for defamation.  As Allstate argues, in the event an amended complaint is filed, the insurer would then review the amended allegations to determine whether they gave rise to a duty to defend.

### c.  Negligent Infliction of Emotional Distress

Continuing in this vein, the Court concludes that there is not even a remote possibility raised by the Underlying Lawsuit that would put Allstate "on notice" that Kim is seeking to recover based upon NIED.  Defendant contends that the alleged statements attributed to her in the Underlying Complaint could be considered to result in "bodily injury" if Kim, at some future point in time, "alleges damages due to resulting physical manifestations of stress, or mental or emotional distress."  (D's Opp. Mem. at 11 (citing Gadiel, 2008 U.S. Dist. LEXIS 90923 at *16-17.))[23/]  Furthermore, Riihimaki references the possibility that Kim may add a claim for NIED at some time in the future.  Id. at 8.

However, Defendant fails to directly link any allegations in the complaint to a potential NIED claim or to

-----

[23/] Riihimaki notes that Kim has not yet itemized her damages because additional discovery is required.  Id. at 12.

-37-

possible damages for bodily harm.  Instead, Defendant suggests that Kim's statements in the interrogatory responses provide "indications" of potential claims for bodily injury that might have resulted from emotional distress.  Id. at 9.  And even assuming that if there was a likelihood the complaint might be amended then the duty to defend could be triggered, Defendant fails to provide any basis to conclude that Allstate was on notice or under a duty to defend regarding a remote possibility that Kim might add an NIED claim or seek damages based upon bodily injury in an amended complaint.

Moreover, this is precisely the type of argument that was flatly rejected in CIM Insurance Corp. v. Masamitsu, wherein the court addressed the problematic nature of "phantom claims" and refused to extend the duty to defend to cover such claims:

> The Tony Group reads too much into Sentinel. Sentinel does not require an insurer to investigate every tendered situation, to uncover all facts arising out of that situation, and to survey every body of Anglo-Saxon common law and ascertain whether there is any possible theory of recovery not yet adopted or rejected in Hawaii—especially for theories not asserted in the underlying action. Such a requirement would effectively cause insurers to become attorneys for the underlying plaintiff. It would require an insurer to do a better job investigating the facts and law than the underlying plaintiff itself. An insurer is required to review and fully investigate the allegations in the complaint against its insured; it is not, however, required to litigate the case against its insured.  A fundamental principle that should underlie any statement of Hawaii insurance law is that a plaintiff is the master of its claim.  The underlying complaint against an insured defines the scope of the action, and, at least initially, of the insurer's investigation.  A plaintiff for any number of plausible reasons may choose purposely not to assert certain

facts or causes of action.  The Tony Group's interpretation of <u>Sentinel</u>'s "legal ambiguity" theory would mean that novel and remotely-possible claims (claims which are neither asserted nor addressed in Hawaii law) would trigger coverage over an otherwise non-covered action. An insurer would be defending against phantom claims.  Given a constantly evolving common law, this Court in applying Hawaii law is unwilling to read as much into <u>Sentinel</u>.

74 F. Supp. 2d 975, 990-91 (D. Haw. 1999) (discussing <u>Sentinel</u>, 76 Haw. at 299, 875 P.2d at 916).[24/]  The Court notes that even if a remote possibility for coverage exists, Allstate owes Riihimaki a defense. <u>Burlington Ins. Co.</u>, 383 F.3d at 944.  Nevertheless, the Court concludes that such a possibility has not been established for potential future claims based upon NIED.  As stated above, Hawaii adheres to the "complaint allegation rule." <u>Burlington</u>, 383 F.3d at 944 (citations omitted). Where, as here, the pleadings do not allege any basis for recovery within the scope of the insurance policy, the insurer has no obligation to defend.  <u>Id</u>. at 944-45 (citations omitted).

Even assuming that Allstate had a duty to look beyond the facts and allegations of the complaint in the Underlying Lawsuit, the Court can find no basis, and Plaintiff has failed to offer one, to conclude that Allstate has been placed on notice or under a duty to defend regarding even a remote possibility that

---

[24/] The Court observes that this discussion focused on legal ambiguity concerning a theory of defamation liability, an issue not presented in the instant action.  Nevertheless, the Court finds this language instructive in determining the extent of an insurer's duty to investigate.

the Underlying Lawsuit will result in liability for a covered claim based upon NIED or damages for bodily harm.

### 5. *No Coverage for Punitive Damages*

Finally, Allstate argues that Hawaii law precludes coverage for punitive damages unless such coverage is specifically included in the insurance policy.  (Mem. in Supp. of MSJ, at 20 (citing Haw Rev. Stat. § 431:10-240)). The Court agrees.  Hawaii law provides that, "[c]overage under any policy of insurance issued in [Hawaii] shall not be construed to provide coverage for punitive or exemplary damages unless specifically included."  Haw. Rev. Stat. § 431:10-240.  In the instant case, the Homeowners Policy does not specifically include coverage for punitive damages.  (See D's Opp. Mem., Ex. B.)  Accordingly, the Court concludes as a matter of law that Allstate is not responsible for any punitive damages which may be awarded against Defendant.  See, e.g., <u>Metropolitan Mgmt.</u>,2007 WL 4157148, at *12 (<u>citing Allstate Ins. Co. v. Takeda</u>, 243 F. Supp. 2d 1100, 1109 (D. Haw. 2003)).

### B.  Allstate Does Not Have a Duty to Indemnify

"The duty to indemnify is narrower than the duty to defend."  <u>Vogelgesang</u>, 2011 WL 2670078, at *11.  Consequently, because the Court concludes that Allstate does not have a duty to defend Riihimaki in the Underlying Lawsuit, Allstate also has no

duty to indemnify Riihimaki with respect to the potential
liability she may face in that suit.  Id. (internal citations
omitted).


**C.  Defendant's Alternative Request for a Rule 56(d)
Continuance is Denied**

In the alternative, Defendant has requested a
continuance pursuant to Rule 56(d) of the Federal Rules of Civil
Procedure, so that Defendant may complete basic discovery in the
Underlying Lawsuit.  (D's Opp. Mem. at 13.)  Specifically,
Defendant contends that additional discovery in the Underlying
Lawsuit is required "to determine Kim's likely additional claims
and damages related to Riihimaki's alleged defamatory actions . .
. ."  Id. at 15.  Defendant asserts that Rule 56(d) motions to
continue are "broadly favored and should be liberally granted" to
avoid a premature grant of summary judgment.  Id. at 14 (quoting
Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir.
2006)).  Plaintiff responds that there is no basis for a
continuance based upon Rule 56(d).  (P's Reply at 11.)  As an
initial matter, Plaintiff argues that Defendant's request for
additional discovery in the Underlying Lawsuit "ignores the well
recognized law that Allstate's duty to defend is based on the
allegations in the Complaint (the 'complaint allegation rule')."

(P's Reply, at 11.)[25/]   Moreover, Plaintiff states that a party

requesting a Rule 56(d) continuance is required to "identify by

affidavit the specific facts that further discovery would reveal,

and explain why those facts would preclude summary judgment."

Id. at 12 (citing Tatum v. City & County of S.F., 441 F.3d 1090,

1100 (9th Cir. 2006)).   A party's failure to comply with the

rule's requirements "is a proper ground for denying discovery and

proceeding to summary judgment."   Id. (quoting Brae Transp., Inc.

v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986)).

Plaintiff argues that Defendant's Rule 56(d) request

is, in essence, "a fishing expedition for evidence that Riihimaki

imagines will support Kim's phantom claims for defamation or

negligent infliction of emotional distress," in other words, a

"stalling tactic" to prevent determination of Allstate's coverage

during the pendency of the Underlying Lawsuit. (P's Reply at 13-

14.)   Rule 56(d) provides:

> When Facts Are Unavailable to the Nonmovant.
>
> If a nonmovant shows by affidavit or declaration that, for
> specified reasons, it cannot present facts essential to
> justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to
>     take discovery; or

---

[25/] Moreover, Defendant contends, "[i]f a determination of
the duty to defend cannot be made until completion of discovery
in the underlying action, there will never be a motion for
summary judgment granted in an action for declaratory relief."
Id.

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  "The Court retains 'broad discretion' in deciding whether to grant a continuance."  Willison, 2011 WL 2580776, at *5 (quoting United States v. Kloehn, 620 F.3d 1122, 1126 (9th Cir. 2010) (internal citations omitted)).  The Court's decision to grant or deny a motion to continue depends upon the circumstances of the case.  Id.

        "A party requesting a continuance pursuant to Rule 56(f) [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  Tatum, 441 F.3d at 1100; see also Sanders v. Laidlaw Educ. Servs., 323 F. App'x 521, 523 (9th Cir. 2009) (concluding that continuance was not warranted where moving party "merely identified pieces of discovery yet to be obtained and depositions yet to be taken").  The Ninth Circuit Court of Appeals has also upheld denials of Rule 56 motions for a continuance where the moving party failed to show that it diligently pursued previous discovery opportunities or how allowing additional discovery would have precluded summary judgment,[26] as well as when the moving party relied upon generalized and conclusory allegations contained in the complaint

---

[26] Clark v. Raytheon Co., 424 F. App'x 654, 655 (citations omitted).

and other previously-filed documents rather than presenting specific reasons to support the request.[27/]

In support of her alternative Motion for a Continuance, Defendant submitted a declaration from her attorney in the Underlying Lawsuit that "Riihimaki has not engaged in extensive discovery . . . due to Riihimaki's efforts to resolve the Underlying Action through her Motion to Enforce Settlement Agreement, and to save on costs." (D's Response to CSF, Decl. of Jason Tani, ¶ 10.) Furthermore, Riihimaki's attorney declared that "[a]dditional discovery in the Underlying Action must be conducted to determine if the Second Settlement Agreement can be unwound . . . and also whether Kim is claiming damages stemming from Riihimaki's alleged defamatory acts." Id. ¶ 11.

The Court concludes that Defendant has not adequately presented specific reasons to support her request for a Rule 56 continuance. Moreover, there is no indication that granting Defendant's motion for a continuance would allow for discovery of evidence that would give rise to disputed issues of material fact in the instant litigation. Defendant claims a need for additional discovery in the Underlying Lawsuit; whereas the Court has emphasized that Hawaii adheres to the "complaint allegation rule." Plaintiff should not have to wait on Defendant's strategy

_____

[27/] Swisher v. Collins, 409 F. App'x 139, 141-42 (9th Cir. 2011).

in delaying discovery - and in the meantime have to provide a defense.   Moreover, the Court finds that Defendant would not be unduly prejudiced by the denial of a continuance.

For these reasons, the Court DENIES Defendant's alternative motion for a Rule 56(d) continuance.


### V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff Allstate's Motion for Summary Judgment and declares that Plaintiff is under no duty to defend or indemnify Defendant in the Underlying Lawsuit.   The Court DENIES Defendant's alternative Motion for a Continuance Pursuant to Fed. R. Civ. P. 56(d).


IT IS SO ORDERED.

DATED:   Honolulu, Hawai'i, May 30, 2012.




_____
Alan C. Kay
Sr. United States District Judge


Allstate v. Riihimaki, Civ. No. 11-00529 ACK-BMK:   Order Granting Plaintiff's Motion for Summary Judgment.